**04CV 12474 DPW**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

11/20/2004

| Plaintiffs | Defendants |
|---|---|
| FILIPPO TOSCANO | Fleet Boston Financial |
| 30 Bradley Road | 1 Federal Street., Made 10306p |
| North Weymouth, MA 02191 | Boston, MA 02110 |

MAGISTRATE JUDGE Cohen

**COMPLAINT**

I, Filippo Toscano, the complainant believe that I was discriminated against by Fleet Boston Financial, Karen Osowski, on the basis of National Origin, Disability, Age in A predominant female department. This is in violation of M.G.L. 151B, Section 4, Paragraph 16; M.G.L. 151B Section 4 Paragraph 1 and **ADA.**
In addition with **28 U.S.C 1331- Question of Federal Law.**


I, Filippo Toscano, the plaintiff, of 30 Bradley Road, North Weymouth 02191, of Norfolk County, Massachusetts and citizen of the United States.
The defendant, Fleet Boston Financial, 1 Federal Street, Made 10306, Boston, MA 02110

This Court has jurisdiction over this matter to 28 U.S.C. 1331- Question of Federal Law.

The events according to my best recollection and evidence in my possession.

I was hired At Fleet Boston Financial as an Operation Supervisor at The Money Center in Malden, Ma October 1999. Supervised 45 stuff members during each shift. Managed the daily functions pertaining to an operations department. Was responsible for daily workflow, scheduling, stuffing, and staff development issues to ensure department production and quality requirements. Coached and motivated staff to achieve high performance standards and company goals. Helped many of my dependent fellow employees to enroll at local High Schools for ESL programs as well is getting others to Attend colleges. During this time I received **achievements** <u>Chart the Course and Foundations of Management Award</u> for high quality performance and improved morale and implemented solutions. In December 2000 I got a new position as a Specialist III with the training department, as a promotion.
  My ex team leader Mike Thorne did not follow a precise agenda of training according to what Karen Osowski is stating in step 3 of my final warning "…as outlined in the job accountability of a trainer Specialist III…within three presentations…"The first couple of weeks I was wondering from the Waltham site, the Dedham site and Columbia Park where we make a decision that this last site will be my home office, because nobody

1

want to go there for the many existing problems. I was the first to accept that responsibility and open the new office because I kwon I am good with people.

Then Mike put me in a class in Dedham with Alexis already started where he kept me for three days, and then he put together a group of four new hired trainers and giving under the direction of Ginny Concannon and Lee Anderson for three more days.

Then Brenda Wornum-Moore and myself spent two more days with Ginny and Lee and we were throw in the middle of the Fleet-Summit merge in Allenhurst NJ, and one week in Candlewood CT, where I got from trainers not help or explanations. In Allenhurst NJ I met for the first time Karen Osowski where she called me aside and said that if I cooperate with her I will be able to keep my job otherwise it would have been the end of my training career. I got very scared and I mention this incident to Brenda Wornum-Moore and Mary Barnes (trainers) and they said to don't worry. In addition to the Fleet-Summit merge, in Massachusetts we were in the final stages of the Fleet-Bank of Boston merge. Three systems unfamiliar to me all at once!!!

So when I returned to Massachusetts I told Mike Thorne. Mike knew the mistake and I was ready to quit, but he told me that I will get a good training and work things out. In may 2001 Mike Thorne told us that he was leaving Fleet and said to me to be very careful because Karen Osowski was taking his position and she is a very hard person to deal with, she is very protected from aboveand she can cause a lot of problems to me. I said to Mike: Then she will fire me after what had happened in Hallenhurst NJ with her intimidation. Mike said: Think positive. For the record I never mention this to you. She is very protected…and God Bless You Filippo.

Karen Osowski , at time of events was my supervisor. She tries to intimidate me during meetings, and often makes fun of my strong Italian accent. There are about nine other trainers, and Ms. Osowski treats them all very well. She would provide additional assistance and training to my co-workers, but would purposely exclude me mostly the time. I almost always receive positive feedback from my trainings, as trainees are provided with evaluations to fill out confidentially. I have an average rating of 4.8 (out a possible 5) on these evaluations. Despite this positive feedback, Ms. Osowski has giving me warnings for my performance. Ms. Osowski took over the department in June 2001. I was due a performance evaluation by her in February 2002, which she refused to give me.

In July 2001 Ms. Osowski mentioned that she would help me with my delivery skills and specifically about my English that according to her was not good for my position. We agreed to get information at some local colleges or universities for a program that would help me to improve my presentation skills.

Karen and I spoke with a professor from University of Massachusetts in Boston from the English Department about a class and Karen seemed to let me enroll in this class. Well we were now at the end of August and I asked Karen Osowski several times to let enroll me before time expires, and she kept postponing me for taking class. Also to understand better my job I asked Karen on August 7 and 8 of 2001 to let me do in my down time BRANCH VISIT and she used this excuse on the third warning. This is unprofessional and dishonest!

I started feeling that Karen was up to something against me and I was getting afraid that I will lose my job. Karen with her authoritative action was making me very uncomfortable. On September 4th 2001 I went to the emergency room at Quincy Medical

The abuse, and all the chaos and turmoil derived from this events (I cannot play and enjoy my seven grandchildren, I cannot pay attention and reciprocate my wife needs in lovemaking, I am depending from my wife to do a lot of things, I cannot do any sport activity, etc.,), I am demanding that for damages caused to me the sum of $ 10.000.000. (Ten Million Dollars in US) should be paid to me. I am asking that a jury to hear this case of mine and help me to be represented because I am on disability and out of work permanently.

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief. Upon request I will provide all material pertinent to this matter.

Filippo Toscano

*(signature)*

Filippo Toscano
30 Bradley Road
North Weymouth, MA 02191

Phone; 7810337-7519

4

# LISA ANTONELLI, M.D., F.A.C.C.
## CARDIOLOGY AND INTERNAL MEDICINE

500 CONGRESS STREET
SUITE 2F
QUINCY, MA 02169
PHONE: 617-472-2270
FAX:    617-773-2193

September 20, 2004

To Whom It May Concern:

Filippo Toscano is disabled by several medical problems. He sustained a myocardial infarction in 2001. He underwent catheterization and stent placement. He continues to have frequent angina, exacerbated by stress and emotional upset. In addition, he developed nerve damage as a complication of his procedure. He has chronic disabling pain of his leg as a result. These conditions are expected to be permanent.

Sincerely,

*[signature]*

Lisa Antonelli, M.D.

**GEORGE F. GALES, JR., M.D.**
953 HANCOCK STREET
QUINCY, MASSACHUSETTS 02170

TELEPHONE: 472-4212

Sept 14, 2004

To Whom It May Concern,

Filippo Toscano remains permanently disabled due to a combination of disorders. He injured his left wrist in 1969 and his right wrist in 1996, with resultant wrist deformities and limitation of motion. He attempted to return to work for "light duty" on 10/18/99, but in 2001 he suffered a heart attack and underwent angioplasty and coronary stent placement. He developed a right femoral nerve injury as a complication of the cardiac catheterization, resulting in pain and numbness in his right thigh.

Mr. Toscano continues to experience chest pains, triggered by emotional stress, related to his heart disease. He also experiences shortness of breath and fatigue. His current medications include Atenolol, HCTZ, Nitroglycerine, Lovastatin, Lexapro, and aspirin.

Respectfully,

George F. Gales Jr.

**GEORGE F. GALES, Jr., M.D.**
**953 HANCOCK STREET**
**QUINCY, MA 02170**
Tel 617-472-4212

January 10, 2000

To Whom It May Concern:

Mr. Filippo Toscano remains under my care for his on-going problems related to his disability. Since my last letter of July 2, 1998, Mr. Toscano has remained totally disabled. He is able to perform limited activities in an office setting, however.

His current restrictions include:
- Lifting only 2-5 pounds occasionally
- No rotation of the right wrist
- No repetitive lifting
- He cannot sit for more than 20 to 30 minutes at a time

He can perform some duties, including:
- Supervising other workers
- Operating a fax machine
- Working on a computer for short periods of time

His current medications include Claritin (for allergies) and Accupril (for high blood pressure).

His disability relates to a prior wrist injury and low back problems.

Respectfully,

*George F. Gales, Jr., M.D.*

## RETURN TO WORK

Date: 4/19/02

Patient: Filippo Toscano
Under care from: 4/19/02 to: _____
Return to work on: (undetermined)
Follow up appointment scheduled: _____ at: _____ am/pm
Illness or injury: work-related stress syndrome

○ Restrictions   ○ Light Work   ○ Normal Work

Comments: He is scheduled to see a specialist prior to being allowed to return to work. His absence is medically necessary.

Practitioner Signature: _____

George F. Gales, Jr., M.D.
953 Hancock Street
Quincy, MA 02170
Tel: 617-472-4212 • Fax: 617-328-7878

154769 01/00

---

DEA # AGC34 966

GEORGE F. GALES, JR., M.D.
INTERNAL MEDICINE
953 HANCOCK STREET
QUINCY, MA 02170
617-472-4212

Name: Filippo Toscano
Address: 30 Bradley Rd. N. Weymouth MA 02191    Date: 4/19/02

℞ (Please Print)

Ambien 5 mg

(#15)

Sig: ī or īī q HS prn for sleep

_____ M.D.

☐ Label

Ref: ___ Times ___ PRN (NR)

INTERCHANGE IS MANDATED UNLESS
THE PRACTITIONER WRITES THE WORDS
'NO SUBSTITUTION' IN THIS SPACE.

01-M____                          01-100040961-12-24894_0009

**RETURN TO WORK**

Date: 2/26/02

Patient: Filippo Toscano
Under care from: 2/17/02 to: 2/26/02
Return to work on: Monday, March 11, 2002
Follow up appointment scheduled: _____ at: _____ am/pm
Illness or injury: Coronary Artery Disease

☑ Restrictions   ☐ Light Work   ☐ Normal Work

Comments: Chest Pains; He should avoid high stress situations as much as possible.

Practitioner Signature: _____

George F. Gales, Jr., M.D.
953 Hancock Street
Quincy, MA 02170
Tel: 617-472-4212 • Fax: 617-328-7878

154769 01/00

DEA # AG8334966

**GEORGE F. GALES, JR., M.D.**
INTERNAL MEDICINE
953 HANCOCK STREET
QUINCY, MA 02170
617-472-4212

NAME: Fillippo Toscano
ADDRESS: 30 Bradley Rd., N. Weymouth MA, 02191   DATE: 9/11/01

℞ (Please Print)

He has been unable to work from 9/4/01 through today, and may not return to work before Monday 9/17/01.

*[signed] George Gales MD*

_____ M.D.

☐ LABEL

REFILL _____ TIMES   PRN   NR   INTERCHANGE MANDATED UNLESS THE PRACTITIONER WRITES THE WORDS 'NO SUBSTITUTION' IN THIS SPACE.

09-NOV-00                                01-100040961-10-22228_0001



**WEYMOUTH MRI**
**MRI DIAGNOSTIC CENTERS**
420 Libbey Parkway   Weymouth, MA 02189   TEL: 781.331.9880  FAX: 781.340.0503

| | | | |
|---|---|---|---|
| Patient | : TOSCANO, FILIPPO | DOB : | 07/24/1949 |
| Exam Date | : 09/29/2003 | Acct/Visit : | 000058378-01/9962 |
| Reference | : 0058250 | | |
| Clinician | : JOHN LAZOR, MD | Page 1 of 2 | |

TYPE OF EXAM: MRI BRAIN W/O & W/CONTRAST

MRI brain with and without contrast.

Indication: Left-sided hearing loss.

Technique: Brain and internal auditory canal protocol with and without contrast.

Findings: There are few scattered small nonenhancing foci of increased T2 signal in the cerebral white matter, a nonspecific finding, but most suggestive of small vessel ischemic white matter disease. In this case it is minimal. It is a fairly common finding which is usually incidental. No mass, hemorrhage, hydrocephalus, extra-axial fluid collection, stroke, or abnormal enhancement. Thin cuts through the internal auditory canals demonstrates VIIth and VIIIth nerve complexes and the inner ear structures to be symmetric and within normal limits.

There is moderate mucoperiosteal membrane thickening in the maxillary sinuses and ethmoid air cells consistent with chronic sinusitis. Middle ear cavities and mastoid air cells are clear.

Conclusion:
1. Minor amount of small vessel ischemic white matter change but no focal suspicious brain lesions.
2. Regions of the internal auditory canals appear normal.
3. Sinusitis in the maxillary sinuses and ethmoid air cells.

Thank you for the courtesy of this referral.

*Michael Ruhoy MD*

Interpreted by: MICHAEL RUHOY, MD
Date: 09/30/2003 16:51:31

