From:  Filippo Toscano
      30 Bradley Road
      N. Weymouth, MA 02191

To: UNITED STATES DISTRICT COURT
    DISTRICT OF MASSACHUSETTS
    1 Courthouse Way, Suite 2300
    Office Of The Clerk
    Boston, MA 02210

N. Weymouth, May 3 2008

| | |
|---|---|
| **Filippo Toscano,**         ) | |
|       **Plaintiff,**     ) | |
|      ) | |
| V                      ) | C.A. No. 04-12474-DPW |
|      ) | |
| **Fleet Boston Financial**    ) | |
|     **Defendant**      ) | |
|       ) | |

**"Statement in Response to Show Cause Order."**
**Motion for Reconsideration for Reinstatement**
**Of Long Term Disability.**

Dear Honorable Judge Douglas P. Woodlock, I would like to thank you very much for Granting me my claim of employment discrimination to go forward.

On April 16, 2008 I filed all required paper work by the Department of Justice United States Marshals Service hence , your Courthouse, 1 Courthouse Way, Suite 500, Boston, MA 02210. Attached you will find a copy of the April 16, 2008 claim.

    Your letter sent to me dated March 26, 2008, line item 3 states: " The claim for wrongful termination of the plaintiff's Long Term Disability benefits has been dismissed without prejudice."

It is my belief that I have exhausted all remedies under the benefits plan. I tried to go back to work with the help of Human Resource representative Susan Membrino. I asked to be moved to a different department. Susan Membrino arranged for an interview at the banks Roslindale branch. I interviewed, and I was told that my interview went very well. I was also told that arrangements were being made to start that job. All of a sudden everything stopped and my transfer was denied.

I have a letter dated January 12, 2005, page 6 form Liberty Mutual (see attached), stating that their vocational counselor called me to offer services to assist me in reentering the work force. They claim that I told them that due to my heart condition, emotional state, and injured vein to my leg that I could no longer work. Hence refusing vocational services. I received this letter from a Ms. Kelli Triano. This is simply not true.

1

Your Honorable Judge Douglas P. Woodlock the statement made by Liberty Mutual is false, abusive and has distorted all the right evidence, the truth. Were is the written statement with the proposal of vocational rehabilitation services help? How contradictory is the fact that I was attempting to go back to work starting with part time leading to a possible full time employment again! This was my goal and the goal of my doctors (you have all my doctors documents on your hands.) Liberty Mutual claims that they have contacted me by phone and offered me the job or a job. Don't you think that I would have gone back to work in a different department? I strongly believe that once I exposed my company, they retaliated against me. I ask Your Honor to be in touch with Human Resource Susan Membrino ar 617-346-0499 at 1 Federal Street, 6th, Floor, Boston, MA 02114, and you will see that I am speaking the truth. I gave you a tape with a message by Susan Membrino as a proof that I am telling the truth. In addition to this I am attaching copies of two E-mail messages, one dated 9-22-2001 by Susan Membrino and one dated 9-27-2001 by Kenneth R. Parks were you can see that I was looking for a different position in another department at Fleet Financial, but my boss Karen Osowski and human resource Maria Mendros of the training department were opposing my transfer because they wanted me terminated and built a case against me the same way Liberty Mutual did. They had harassed me, discriminated against me, and terminated me unjustly.

My Psychiatrist Doctor Gagarin would had giving me okay to go back to work if they had made all appropriate arrangements for this transition period of reentering the work place. He wanted things to go smoothly, instead they terminated me, because they knew I had no attorney and they recovered from me $ 8,000.00. This $ 8,000.00 I received from Social Security Disability. Liberty Mutual felt that since I was receiving benefits under their long term disability they claimed I wasn't entitled to that money, which I did give back to them.

Honorable Judge Douglas P. Woodlock you know better then any other person that no " Reasonable Person on Heart" would had giving me permission to return to work to a "Hostile Department Environment", rather we were hoping to start little by little in a different department, things that they claim they offered to me, but in reality they never did, I know, I never would have miss understood them if they ever had called me and offered the position in a different department. Why they never wrote and sent me a written statement of the job or job they claim they had proposed me? I have no statements of that in my possession.

Please Your Honor reconsider my request for Reinstatement of Long Term Disability with all my evidence that you have in your hands. In addition should I be reinstated to Long Term Disability do am I entitled to retroactive benefits from the day they stopped Benefits to present?

I am very grateful to your honor for listening to me and giving me one more chance to let the truth triumph. I am still waiting for the pro-bono attorney.
I hope for a positive answer. Thank you very much and God Bless All!

Sincerely

*[signature: Filippo Toscano]*

Filippo Toscano

| U.S. Department of Justice<br>United States Marshals Service | **PROCESS RECEIPT AND RETURN**<br>See Instructions for "Service of Process by the U.S. Marshal"<br>on the reverse of this form. |
|---|---|

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| Fil... T...no | ...  |
| **DEFENDANT** | **TYPE OF PROCESS** S... |
| ... | ... |

**SERVE** ➡ NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
State Insurance C/o ... of America

**AT** ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
1 Federal St ... MA ...

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

FILIPPO TOSCANO
30 BRADLEY RD
N. WEYMOUTH MA 02191

| Number of process to be served with this Form - 285 | 4 |
|---|---|
| Number of parties to be served in this case | 1 |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

Signature of Attorney or other Originator requesting service on behalf of:  ☒ PLAINTIFF  ☐ DEFENDANT
Filippo Toscano
TELEPHONE NUMBER: 781-337-9519
DATE: 4-16-2008

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | 1 | 38 | 38 | | 4/16/08 |

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

Name and title of individual served (if not shown above):
Arthur Jueng, Asst Atty Gen

☐ A person of suitable age and discretion then residing in the defendant's usual place of abode.

Address (complete only if different than shown above):
ARTHUR

Date of Service: 4/18/08   Time: 10:15 am

Signature of U.S. Marshal or Deputy

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|
| 45 | | | 45 | | | |

REMARKS:

NOTE

```
Author:  Susan J Membrino at FFGBOS08-FED
Date:    09/22/2004  1:06 PM
Normal
TO: Filippo Toscano at FFGMAL01-ISU
Subject: Info. Requested
------------------------------ Message Contents

    Phil...got your message & wanted to reply providing you my fax #
    (617)346-0637 & mailstop MADE10306P.
    By the way who did you interview with yesterday? If you provide me her
    name & number I'll give her a call to give you a strong
    recommendation. Have a great weekend! Sue
```

```
Author:  KENNETH R PARKS at NorthAmerica20
Date:    09/27/2001  7:41 AM
Normal
TO: Filippo Toscano at FFGMAL01-ISU
Subject: Opportunities
------------------------- Message Contents
Phil - Sue Peterson has given me your resume. I would like to meet with you
asap. call me at 617-847-3448. I look forward to meeting you
```



**Liberty Life Assurance Company of Boston**

January 20, 2005

Disability Claims
P.O. Box 1525
Dover, NH 03821-1525
Phone No: (800) 210-0268
Fax No. (603) 743-6422

Flippo Toscano
30 Bradley Road
N Weymouth, MA 02191

RE:   Long Term Disability Benefits
      FleetBoston Financial Corp
      Claim #744036

Dear Mr. Toscano

We are writing in regard to your claim for disability benefits. We have completed a thorough review of your continued eligibility for disability benefits, and have determined that benefits are no longer payable. The FleetBoston Financial Corp Long Term Disability policy requires that to receive benefits beyond 24 months, or October 20, 2004, you must meet the following definition of disability.

***"Disability" or "Disabled" means:***

i. *If the Covered Person is eligible for the 24 Month Own Occupation Benefit, **"Disability"** or **"Disabled"** means during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and*

ii. *After 24 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.*

In order to evaluate whether or not you met the above change in the definition of disability, we requested medical information from your physician(s).

You indicate you have a physical condition of angina and neuropathy and the medical documentation dated May 18, 2004 from Dr. George Gales shows your physical impairment as class 5, which is incapable of minimum activity. He indicates you cannot sit more than 20 minutes.

On October 10, 2003, you were cleared physically by Dr. Antonelli, your cardiologist

We also requested information from Dr. Gales. On September 14, 2004 he states you remain permanently disabled due to a combination of disorders. He indicates you injured your left wrist in 1969 and your right wrist in 1996, with resultant wrist deformities and limitation of motion. He further states, "he attempted to return to work for "light duty" on October 18, 1999, but in 2001 he suffered a heart attack and underwent angioplasty and coronary stent placement. He developed a right femoral nerve injury as a complication of the cardiac catheterization, resulting in pain an numbness in his right thigh." Dr. Gales indicates you continue to experience chest pains and shortness of breath, triggered by emotional stress, related to your heart disease."

On September 20, 2004 we received a note from Dr. Antonelli. She indicates that you continue to have frequent angina, exacerbated by stress and emotional upset. She also states you have chronic disabling pain of your leg and these conditions are expected to be permanent.

On October 8, 2004 your file was sent to Dr. Philip Jordan Marion and Dr. Michael Rosenberg for a peer review.

Dr Marion spoke to Dr. Gales on October 21, 2004. Dr. Gales indicated you have complaints of depression and anxiety, which causes chest pain when you are in a stressful situation. He states, "there were no significant objective neurological or musculoskeletal deficits that would preclude him from performing his routine sedentary or light duty activities at work." However, Dr. Gales stated that you were totally disabled secondary to you underlying psychiatric and cardiac diagnoses. Again, Dr. Gales indicated that there were no objective neurological or musculoskeletal deficits that would have precluded you from performing sedentary or light duty physical demand work. We then asked that Dr. Marion answer some specific questions regarding your claim.

1. From a physical and pain management perspective, based on the available medical documentation, what is the correct diagnosis related to claimant's right leg pain?

Mr. Toscano's clinical presentation is consistent with a diagnosis of right lateral femoral cutaneous neuropathy consistent with a diagnosis of meralgia paresthetica. He had a documented normal electrodiagnostic evaluation. However, this diagnosis is a purely sensory presentation and should not have any significant motor strength component.

2. From a physical and pain management perspective, as of October 20, 2004, what are reasonable restrictions and limitations for this claimant?

From a physical medicine and pain management perspective, there are no particular restrictions or limitations for Mr. Toscano. There are no significant neurological or functional deficits noted in the clinical record. In addition, there have been no noted cognitive deficits that also might affect his functional capability.

3. Based on the medical documentation, does the claimant have an impairment, which prevents him from performing sedentary work as of October 20, 2004?

Based on the medical documentation, Mr. Toscano does not have an objective impairment that would prevent him from performing sedentary work as of October 20, 2004. There are no objective neurological deficits, significant radiological pathology, or electrodiagnostic deficits that would preclude him from performing the routine duties of a sedentary job as of October 20, 2004.

4. Based on the medical documentation, does claimant have impairment, which prevents him from performing light physical demand work as of October 20, 2004? Please explain.

As noted in the above question, based on the medical documentation, Mr. Toscano does not have impairments that would prevent him from performing light physical demand work as of October 20, 2004. There are no objective neurological deficits, radiological pathology, or electrodiagnostic deficits that would preclude him from performing light physical demand work as of October 20, 2004.

Dr. Rosenberg states, "Mr. Toscano has no cardiovascular impairment on the basis of objective findings. The two recent exercise tests, in 2003, and 2004, both demonstrate functional class 1 activity, limited by fatigue and by difficulty with his meralgia related to the right leg. There are no findings of left ventricular dysfunction or heart failure, and no rhythm disturbances or syncope. Thus, there is no cardiovascular limitation supported on the basis of the records provided." He further states, "Mr Toscano has no cardiovascular limitations of function on the basis of the information provided. Stress appears to play a commanding role in Mr. Toscano. Psychiatric impairment, however, is beyond the scope of this examiner's expertise. From a cardiovascular perspective, however, there are no limitations of function. There are no safety restrictions to be placed upon Mr. Toscano due to his cardiovascular disease." Dr. Rosenberg tried to make phone contact with Dr. Antonelli on October 15, 2004, October 18, 2004, October 26, 2004, and again October 28, 2004. At the time of preparation of this report, a return call was not received.

We then asked that Dr. Rosenberg to answer some specific questions regarding your claim.

1. Based on the available medical documentation from a cardiovascular perspective as of October 20, 2004, what are reasonable restrictions and limitations?

There are no reasonable cardiovascular limitations or restrictions to be placed upon Mr. Toscano. His exercise test demonstrates him to be functional class 1 limited by fatigue and leg paresthias. He demonstrates no evidence of myocardial ischemia and no evidence of left ventricular dysfunction or rhythm disturbance.

2. Please explain the claimant's impairment and the medical basis for that impairment?

Mr. Toscano has a history of coronary artery disease, treated with stent implantation in the mid left anterior descending. There is a statement in the record relating to previous myocardial infarction, but there is no evidence thereof on the perfusion images or electrocardiograms. No records are provided supporting that. Thus, there is no cardiovascular impairment.

3

3. Based on the medical documentation, does the claimant have impairment, which precludes his performing sedentary work as of October 20, 2004?

Mr. Toscano has no cardiovascular impairment, and would be capable of performing sedentary work as of October 20, 2004.

4. Based on the medical documentation, does the claimant have impairment, which would preclude him from performing light physical demand work as of October 20, 2004?

Mr. Toscano has no cardiovascular limitations that would preclude him from performing light physical demand work as of October 20, 2004.

On November 5, 2004, Dr. Antonelli returned Dr. Rosenberg's call. When asked about your cardiovascular status, Dr. Antonelli response was, "He is disabled more from an anxiety perspective. He continues to have chest pain, but it is more from anxiety and somatization than from CAD. He has had normal stress tests and…you know." So in summary from Dr. Rosenberg, the teleconference information has not altered his previous opinion.

On November 10, 2004 we received forms completed by Dr. Andrey Gagarin. Dr. Gagarin indicated you have significant restrictions to sustain work performance, attention span and cope with work pressures.

On November 11, 2004 we received forms completed by Laurie Sherwood, LICSW. She indicated you have significant restrictions to sustain work performance, attention span and cope with work pressures.

On December 30, 2004 your file was referred to Dr. Andrew Brown, M.D. consulting psychiatrist for review. On January 11, 2005, he stated, "The presence of anxiety and deconditioning in the insured is directly attributable to his prolonged separation from the workplace. Optimal occupations and jobs for the insured would include those positions which do not initially expose the insured to undue amounts of time pressure or an excessive degree of responsibility. Initial expectations of the insured at the workplace would ideally entail that he complete relatively routine and concrete tasks. It would be especially important to avoid exposing the insured to any ambiguity with regard to a) precisely what is expected of him, and b) the particular tasks which he is expected to accomplish. While formal restrictions and limitations are not indicated in this case, given the insured's prolonged separation from the workplace he may choose to work part time for a discrete period of time prior to transitioning to full time employment. Similarly, discussions about job fit for the insured should be informed by an awareness of the insured's particular sensitivities and talents."

In addition, we asked that our consulting physician contact your physician. Dr. Brown spoke to Dr. Gagarin on January 11, 2005. The following are excerpts from their conversation.

"We discussed the insured's deconditioning in the context of his prolonged separation from the workplace, the types of work activity which the insured would be best suited for, and

4

those types of demands which you felt would not be appropriate for the insured. While you emphasized a) the insured's motivation to return to work, b) the fact that he manifested intact intellectual ability, and c) the benefits which would be expected to be derived from a return to work (i.e., daily structure, stable income, restoration of self esteem), you also characterized the insured as a highly anxious individual who had certain sensitivities which needed to be acknowledged. You felt that the insured would do best in an atmosphere in which he was not expected to assume an excessive amount of responsibility. You did not feel that the insured could be perform if exposed to undue amounts of time pressure. We agreed that the insured would be expected to have a difficult time tolerating any type of criticism, and that the insured would therefore be best suited for a job in which he was unlikely to experience excessive performance demands.

We moved on to a discussion of specific occupations, which might be appropriate for the insured. I referred to a transferable skills analysis which I had reviewed (but which I did not have in front of me) and recalled that the occupation of office clerk was among those listed. We agreed that placement in such a job would be feasible for the insured, assuming that the insured's particular job did not involve the pressures referred to in the previous paragraph. You reiterated that the insured was motivated to work and that he manifested an intact intellectual ability. (For your information, Dr. Gagarin, since I spoke with you I re-reviewed the transferable skills analysis and was reminded of the other occupations listed. They include: Translator, English as a Second Language Instructor, and Customer Service Representative).

You indicated that the insured would do best if he was allowed to transition back to work. You feel that the insured should work part time initially, and then eventually return to full time work. We discussed the potential relevance of vocational rehabilitation services for the insured. I indicated that while I was not aware of whether Mr. Toscano's disability insurance contract/policy allowed for the provision of such services, that I could inquire about the availability of such services if you felt that Mr. Toscano could benefit from the offering of such services. You felt that the insured would be receptive to the offering of such services, and that he would avail himself of supportive services aimed at assisting him in his return to work

In closing, we agreed that the insured's separation from the workplace had been unnecessarily prolonged and that the insured would be best served by a return to work. We discussed the unfortunate circumstances surrounding his termination from Fleet Bank and the insured's experience of this termination as unjust.

Your file was referred to a Vocational Specialist to conduct a vocational analysis of your current capabilities, training, education and experience. The results show your transferable skills include:

- Skilled in teaching, speaking and writing Italian in correlation with the English language. Ability to write effectively and clearly communicate and summarize documents and ideas.
- Communicating effectively verbally and in writing
- Ability to utilize computer in business environment.
- Ability to give and follow written and verbal instructions.

- Ability to record information accurately.
- Ability to complete a variety of tasks and respond to change.
- Can use logic and reasoning to identify the strengths and weaknesses or alternative solutions, conclusions or approaches to problems.
- Documents and assesses information through entering, transcribing, recording, storing, and maintaining information in written or electronic form.
- Skilled in ability to influence, motivate, and train others with patience and creativity.

Based on this information you have the ability to perform the following occupations:
- Customer Service Representative
- Translator/Interpreter
- Office Clerk
- ESL Teacher

On January 12, 2005 our vocational counselor called you to offer vocational services to assist you with re-entry into the work force. You stated you were disabled for life due to your heart, emotional states and injured vein in your leg. Therefore, refusing our offer of vocational rehabilitation services, the vocational counselor has closed your file.

We have determined that you could perform with reasonable continuity the material and substantial duties of these occupations based on your capacity and skill level.

Therefore you do not meet FleetBoston Financial Corp definition of disability beyond October 20, 2004 and we must deny your claim for further benefit consideration, and your claim is closed as of January 19, 2005.

This claim determination reflects an evaluation of the claim facts and policy provisions.

Under the Employee Retirement Income Security Act (ERISA), you may request a review of this denial by writing to:

> The Liberty Life Assurance Company of Boston
> Attn: Kelli Triano
> P.O. Box 1525
> Dover, NH 03821-1525

You may also request to receive, free of charge, copies of all documents relevant to your claim. The written request for review must be sent within 180 days of your receipt of this letter and state the reasons why you feel your claim should not have been denied. If Liberty does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, and no further review of your claim will be conducted. In your request for review you should include all documentation, such as test results, consultations, claim specific information, which you feel will support your claim, as you will be afforded one opportunity for review.

Under normal circumstances, you will be notified of the final decision within 45 days of the date that your request for review is received.

If there are special circumstances requiring delay, you will be notified of the final decision within 90 days after your request for review is received. Additional time for final decision may exceed 90 days to the extent that the timeframe is tolled while Liberty is awaiting receipt of requested documentation needed to fully evaluate your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If you have any questions about this determination please call me.

Sincerely,

Kelli Triano
Sr. Disability Case Manager
1-800-210-0268 Ext. 38926
fax (603) 743-6422

7