UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILIPPO TOSCANO,

Plaintiff,

v.

FLEET BOSTON FINANCIAL,

Defendant.

Civil Action No.  04-12474-DPW

## DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

In accordance with Fed. R. Civ. P. 12(b)(6), Defendant Bank of America, N.A. (improperly named in Complaint as "Fleet Boston Financial") ("Defendant" or "the Bank"), by and through its attorneys, submits this Rule 12(b)(6) Motion To Dismiss two counts of Plaintiff Filippo Toscano ("Plaintiff" or "Toscano") Complaint, and accompanying memorandum of law with exhibits.  In support of its Motion, Defendant states that Plaintiff does not and cannot allege any facts that would entitle him to relief against the Defendant with respect to his age and disability discrimination claims.

The Bank is requesting the dismissal of  Tosaco's age discrimination claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. and Chapter 151B of the Laws of Massachusetts, M.G.L. ch. 151, 1, et seq. for failure to timely exhaust administrative remedies.  In addition, the Bank is seeking the dismissal of Toscano's claim for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA") for failure to allege the essential elements necessary to show that he is a qualified person with a disability under the ADA or that he suffered an adverse employment action as a result of his alleged disability.

BOS 623023.1

For the reasons stated herein, and in the accompanying memorandum of law with exhibits, the Court should grant Defendant's Motion, dismiss Plaintiff's claims with respect to his age and disability claims with prejudice, and award Defendant such other and further relief as the Court deems just and proper.

BANK OF AMERICA, N.A.,

By its attorneys,


/s/ Alice A. Kokodis
Alice A. Kokodis (BBO #631401)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA  02199-7613
617.239.0100

Dated: May 8, 2008

LOCAL RULE 7.1(A)(2) CERTIFICATION

     The undersigned hereby certifies, pursuant to Local Rule 7.1(A)(2), that counsel for the defendant, Alice A. Kokodis,  has conferred with counsel for the plaintiff, Filippo Toscano, and attempted in good faith to resolve the issues presented in this motion to dismiss but was unable to do so.


Dated:  May 8, 2008                /s/ Alice A. Kokodis
                              Alice A. Kokodis

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on the 8th day of May 2008, a true copy of the Defendants' Rule 12(B)(6) Motion to Dismiss was filed electronically with the Court's CM/ECF system and thereby served by certified mail to pro se Plaintiff:

       Filippo Toscano
       30 Bradley Road
       N. Weymouth, MA  02191


                /s/ Alice A. Kokodis___
                Alice A. Kokodis

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILIPPO TOSCANO,

               Plaintiff,

    v.

FLEET BOSTON FINANCIAL,

               Defendant.

Civil Action No.  04-12474-DPW

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS PARTIAL RULE 12(B)(6) MOTION TO DISMISS**

## I.      PRELIMINARY STATEMENT

Defendant Bank of America, N.A. (improperly named in Complaint as "Fleet Boston Financial") ("the Bank") submits this Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss plaintiff Filippo Toscano's ("Plaintiff" or "Toscano") age and disability discrimination claims for failure to state claim upon which relief can be granted.  On April 23, 2002, Toscano, with the assistance of counsel, filed a charge of discrimination against the Bank with the Massachusetts Commission Against Discrimination ("MCAD") alleging that the Bank discriminated against him on the basis of his national origin (Italian) and disability (heart attack). On September 18, 2003, the MCAD issued a finding of no probable cause.

On November 22, 2004, Toscano filed the instant *pro se* Complaint alleging disability and national origin claims and, for the first time, raised allegations of age discrimination.  By way of this Motion, the Bank is requesting the dismissal of the age discrimination claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and Chapter 151B of the Laws of Massachusetts, M.G.L. ch. 151, 1, et seq. ("Chapter 151B") for failure to

timely exhaust administrative remedies.  In addition, the Complaint fails to allege essential facts

to support a claim for disability discrimination under the Americans with Disabilities Act, 42

U.S.C. §12101 et seq. ("ADA").  Specifically, Toscano fails to allege expressly or by inference,

the essential elements necessary to show that he is a qualified person with a disability under the

ADA or that he suffered an adverse employment action as a result of his alleged disability.

Therefore, Toscano cannot state a claim upon which relief can be granted under the age and

disability discrimination claims and these claims should be dismissed pursuant to Mass. R. Civ.

P. 12(b)(6).

## II.    STATEMENT OF FACTS[1]

The Bank hired Toscano in October 1999 as an Operations Supervisor to work at its retail

operations center in Malden.  Complaint at ¶ 5.  A true and accurate copy of the Complaint is

attached as Exhibit A.[2]  In December 2000, Toscano applied for and received a position as a

teller trainer.  Id.  In or about June 2001, Karen Osowski ("Osowski") became Toscano's

supervisor.  Complaint at ¶ 9.  According to Toscano, Osowski, who supervised approximately

nine other trainers, unfairly targeted him for unwarranted criticisms regarding his performance

because of his Italian descent. Complaint at ¶ 10.  Osowski also allegedly made negative

comments concerning Toscano's command of the English language and his Italian accent.

Complaint at ¶ 11.

On September 4, 2001, Toscano sought treatment for a heart condition and thereafter

---

[1] Ordinarily, in assessing Plaintiff's allegations, the Court may only consider facts listed in the Complaint. Fed.R.Civ.P. 12(b)(6).  However, a narrow exception exists "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to the [Plaintiff's] claim; or for documents sufficiently referred to in the complaint."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993).  Here, Defendant attaches several documents to its Motion to Dismiss that fall within these exceptions.

[2] Plaintiff has failed to recite the allegations in numbered paragraphs.  Therefore, Defendant will assign a number to each paragraph beginning with "1" which will reference the first paragraph beginning with "I, Filippo Toscano, the complainant…"

commenced a medical leave of absence of unknown duration.  Complaint at ¶ 13.  Toscano

alleges, although the time frame is unclear, that Osowski unfairly critiqued his training style by

commenting that he sat, "leaned too much on one side" and that his voice was too loud during

his training sessions. Complaint at ¶ 15.  Although Toscano does not deny the truth of these

comments, he appears to allege that this behavior was attributed to a partial hearing loss and

medical problems with his heart and leg.  Id.

On April 19, 2002, Toscano was placed on an indefinite leave of absence due to his heart

condition.  Complaint at ¶ 18.  In the Complaint, Toscano alleges that on April 23, 2002, he had

a meeting scheduled with the Director of Training to discuss concerns with his employment.  Id.

Toscano claims that the meeting was canceled.  Id.

On April 23, 2002, Toscano filed a charge with the MCAD, which was cross-filed with

the EEOC, alleging national origin and disability discrimination ("Charge").  A true and accurate

copy of the Charge is attached as Exhibit B.  The Charge similarly alleged that the Bank

mistreated Toscano because of his national origin. Id. Although Toscano also alleged that The

Bank discriminated against him on the basis of his disability, the Charge did not cite to any facts

in support of this claim other than Toscano having suffered a heart attack and the cancellation of

a meeting while he was on medical leave of absence. Id.  Moreover, Toscano did not allege any

facts to suggest that the Bank engaged in any age discrimination in the workplace.

On November 22, 2004, Toscano filed the Complaint in this lawsuit, accusing the Bank of

violating Title VII of the Civil Rights Act of 1964 ("Title VII"), the ADEA, the ADA and

Chapter 151B.  Complaint.

## III.    ARGUMENT

### A.    The Applicable Legal Standard.

The standard for evaluating a Rule 12(b)(6) motion is whether "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  The court "must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff[]." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins., 267 F.3d 30, 33 (1st Cir. 2001).  However, the court need not accept "a complainant's unsupported conclusions or interpretations of law." Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001).

When considering the allegations of a *pro se* plaintiff, a less stringent standard is to be applied than for pleadings drafted by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972).  This relaxed standard, however, neither requires the court to "conjure up unpled allegations" in a *pro se* complaint, Haines, 404 U.S. at 521, nor relieves the *pro se* plaintiff of his obligation to prove a jurisdictional basis for his lawsuit by mustering more than "unsupported conclusions or interpretations of law." Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir.1993).  Application of this standard to the facts of this case, as alleged by Toscano, establishes that allegations concerning age and disability discrimination should be dismissed.

### B.    Toscano's Claims under the ADEA Must Be Dismissed for Failure to Exhaust Administrative Remedies.

Toscano's age discrimination claim is unquestionably time-barred and must be dismissed. Under the administrative scheme created by the ADEA, a party must file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and exhaust his administrative remedies prior to filing a lawsuit in this Court. 29 U.S.C. §626(d).  Specifically, subsection 626(d)(2) requires that an employee file a charge with the EEOC within 300 days

"after the alleged unlawful practice occurred." See Davis v. Lucent Techs., Inc., 251 F.3d 227, 230 (1st Cir.2001) (citing 29 C.F.R. § 1601.13(a)(4)). Such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation under the ADEA. Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir.1990).

To the extent Toscano pleads claims under the ADEA, he has failed to exhaust his remedies before the EEOC.[3] Although Toscano filed a Charge with the MCAD on April 23, 2002, he made no mention of discrimination on the basis of age, indicating only that he "believe[d] that [he] was discriminated against by on the basis of national origin and disability." In addition, he did not allege any facts within the body of the Charge that would suggest an age discrimination claim. The filing of the instant litigation is long after all possible filing deadlines under the ADEA. See 42 U.S.C. § 2000e-5(e); 29 U.S.C. §626(d). Accordingly, Toscano's ADEA claims must be dismissed for failure to exhaust the required administrative remedies.

## C.     Toscano's Complaint Fails to Articulate Facts to Support A Claim for Disability Discrimination

Toscano alleges that the Bank discriminated against him on the basis of an alleged disability in violation of the ADA. Even though the court must resolve any doubts in favor of Toscano on a motion to dismiss, Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir.1991), Toscano still must provide "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988). Toscano has failed to plead sufficient allegations to establish a *prima facie* case of disability discrimination; namely that he was disabled within the meaning of the Act or that he suffered an adverse employment action because of a disability.

---

[3] The claim Toscano filed April 23, 2002 with the MCAD would have served as a simultaneous filing with the EEOC as well since Massachusetts has a "work-sharing" agreement with the EEOC. Davis v. Lucent Techs., Inc., 251 F.3d at 230.

To establish a claim of disability discrimination under the ADA, Toscano must allege

facts sufficient to show that (1) he was "disabled" within the meaning of the Act; (2) he was able

to perform the essential functions of his job, with or without reasonable accommodation; and (3)

he suffered an adverse employment action.  See Kvorjak v. Maine, 259 F.3d 48, 54 (1st Cir.

2001); Phelps v. Optima Health, Inc., 251 F.3d 21, 24 (1st Cir. 2001).  Toscano's Complaint is

silent with respect to the first and third required criteria to establish a *prima facie* case of

disability discrimination and, accordingly his ADA claim must be dismissed. [4]

       1.     Toscano Has Failed to Allege Facts That He Is Disabled Under The ADA.

In order to establish that he is disabled under the ADA, Toscano must demonstrate,

through specific facts within the Complaint, that his physical or mental impairment substantially

limited one or more of his major life activities at the time of the adverse employment action.  42

U.S.C. § 12102(2)(A)-(C).  See Hatin v. Merrimac Spool & Reel, 2003 WL 21956441, *1 (D.

Mass. 2003) (emphasis added) citing Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1166 (1st

Cir. 2002).  Liberally construing the facts alleged in the Complaint, Toscano appears to allege

that a heart condition, leg problems and hearing loss represent "physical impairments" under the

Act.

However, the Complaint is void of any facts that suggest how these alleged impairments

"substantially limit" a major life activity.  To establish that he is "substantially limited" in an

activity, Toscano "must show that his impairment 'prevents or severely restricts' his ability to

perform that activity as compared with how unimpaired individuals normally perform that

activity."  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196 (2002).  To be a major

---

[4] In the Complaint, it is unclear if Toscano alleges that he was capable of performing the essential functions of his position. While he claims at one point that he did not have the proper training for the position and was ready to quit, Complaint at ¶ 9, he than alleges that he received positive feedback from is trainings. Complaint at ¶10. For the purposes of this Motion only and after a generous reading of the Complaint, the Bank will not argue that Toscano failed to provide factual support to establish the second prong of the *prima facie* case for disability discrimination.

life activity, a task must be "of central importance to daily life." See, e.g., Bailey, 106 F.3d at 1169. Even if the Court were to interpret the Complaint as alleging that Toscano was substantially limited in the major life activity of working,[5] nothing in the Complaint suggests that Toscano's alleged impairments precluded him from either performing the position of teller trainer or a broad class of jobs.[6] Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999) ("[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.)

2.    Toscano Has Not Pled Facts Sufficient To Support An Adverse Action.

Toscano must also plead facts demonstrating the third prong of the prima facie case, to wit, that he suffered an adverse employment action because of his alleged disability. An action is materially adverse if the employer: (1) take[s] something of consequence from the employee, say, by discharging or demoting him, reducing his salary, or divesting him of significant responsibilities; or (2) withhold[s] from the employee an accouterment of the employment relationship, by failing to follow a customary practice of considering him for a promotion after a particular period of service. Pedicini v. U.S., 480 F.Supp. 2d 438, 442 (1st Cir. 2007).

Toscano has not identified any action or a concert of actions that could be considered as seriously and tangibly altering the conditions of his employment. Toscano makes one allegation that his supervisor commented in a warning that he sits and leans too much while conducting trainings. Complaint at ¶ 15. While he claims that this was necessitated due to his leg and heart

---

[5] There is a heightened pleading standard for ADA claims where the only major life activity alleged is working. Fotos v. Internet Commerce Express, Inc., 154 F.Supp.2d 212 (2001) referring to Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999).
[6] Although the EEOC regulations include working on the list of major life activities, the United States Supreme Court has expressed some doubt. See Sutton v. United Air Lines, Inc., at 492 (1999). The First Circuit has thus far assumed, without deciding, that working may be a major life activity. See Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 116 (1st Cir. 2004).

conditions, he does not make any allegations that he suffered any adverse employment action because of this comment.  Toscano does not allege that this one comment was serious enough or had any impact on the terms of his employment.  The only other allegation that Toscano appears to make in support of his ADA claim is that a meeting was canceled while he was out on medical leave.  Complaint at ¶ 19.  Again, this is insufficient to prove an adverse employment action. While Toscano asserts that he was discriminated against because of his disability, the Court need not "conjure up unpled allegations" to support Toscano's theory of the case.  Haines, 404 U.S. at 521.

## IV.    CONCLUSION

WHEREFORE, Defendant Bank of America, N.A., respectfully requests that pursuant to Mass. R. Civ. P 12(b)(6), Plaintiff's age and disability discrimination claims be dismissed, with prejudice.

BANK OF AMERICA, N.A.

By its attorneys,

/s/ Alice A. Kokodis
Alice A. Kokodis (BBO #631401)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA  02199-7613
617.239.0100

Dated: May 8, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of May 2008, a true copy of the Defendants' Memorandum of Law in Support of its Rule 12(B)(6) Motion to Dismiss was filed electronically with the Court's CM/ECF system and thereby served by certified mail to pro se Plaintiff:

Filippo Toscano
30 Bradley Road
N. Weymouth, MA  02191

/s/ Alice A. Kokodis___
Alice A. Kokodis

# EXHIBIT A

**04 CV 1 2 4 7 4 DPW**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

11/20/2004

2004 NOV 22 A 9:40

| Plaintiffs | Defendants |
|---|---|
| **FILIPPO TOSCANO** | **Fleet Boston Financial** |
| 30 Bradley Road | 1 Federal Street., Made 10306p |
| North Weymouth, MA 02191 | Boston, MA 02110 |

MAGISTRATE JUDGE _Cohen_

**COMPLAINT**

I, Filippo Toscano, the complainant believe that I was discriminated against by Fleet Boston Financial, Karen Osowski, on the basis of National Origin, Disability, Age in A predominant female department. This is in violation of M.G.L. 151B, Section 4, Paragraph 16; M.G.L. 151B Section 4 Paragraph 1 and **ADA.**
In addition with **28 U.S.C 1331- Question of Federal Law.**

I, Filippo Toscano, the plaintiff, of 30 Bradley Road, North Weymouth 02191, of Norfolk County , Massachusetts and citizen of the United States.
The defendant, Fleet Boston Financial, 1 Federal Street, Made 10306, Boston, MA 02110

This Court has jurisdiction over this matter to 28 U.S.C. 1331- Question of Federal Law.

The events according to my best recollection and evidence in my possession.

I was hired At Fleet Boston Financial as an Operation Supervisor at The Money Center in Malden, Ma October 1999. Supervised 45 stuff members during each shift. Managed the daily functions pertaining to an operations department. Was responsible for daily workflow, scheduling, stuffing, and staff development issues to ensure department production and quality requirements. Coached and motivated staff to achieve high performance standards and company goals. Helped many of my dependent fellow employees to enroll at local High Schools for ESL programs as well is getting others to Attend colleges. During this time I received achievements **Chart the Course and Foundations of Management Award** for high quality performance and improved morale and implemented solutions. In December 2000 I got a new position as a Specialist III with the training department, as a promotion.
    My ex team leader Mike Thorne did not follow a precise agenda of training according to what Karen Osowski is stating in step 3 of my final warning "...as outlined in the job accountability of a trainer Specialist III...within three presentations..."The first couple of weeks I was wondering from the Waltham site , the Dedham site and Columbia Park where we make a decision that this last site will be my home office, because nobody

1

want to go there for the many existing problems. I was the first to accept that responsibility and open the new office because I kwon I am good with people.

Then Mike put me in a class in Dedham with Alexis already started where he kept me for three days, and then he put together a group of four new hired trainers and giving under the direction of Ginny Concannon and Lee Anderson for three more days.

Then Brenda Wornum-Moore and myself spent two more days with Ginny and Lee and we were throw in the middle of the Fleet-Summit merge in Allenhurst NJ, and one week in Candlewood CT, where I got from trainers not help or explanations. In Allenhurst NJ I met for the first time Karen Osowski where she called me aside and said that if I cooperate with her I will be able to keep my job otherwise it would have been the end of my training career. I got very scared and I mention this incident to Brenda Wornum-Moore and Mary Barnes (trainers) and they said to don't worry. In addition to the Fleet-Summit merge, in Massachusetts we were in the final stages of the Fleet-Bank of Boston merge. Three systems unfamiliar to me all at once!!!

So when I returned to Massachusetts I told Mike Thorne. Mike knew the mistake and I was ready to quit, but he told me that I will get a good training and work things out. In may 2001 Mike Thorne told us that he was leaving Fleet and said to me to be very careful because Karen Osowski was taking his position and she is a very hard person to deal with, she is very protected from aboveand she can cause a lot of problems to me. I said to Mike: Then she will fire me after what had happened in Hallenhurst NJ with her intimidation. Mike said: Think positive. For the record I never mention this to you. She is very protected...and God Bless You Filippo.

Karen Osowski , at time of events was my supervisor. She tries to intimidate me during meetings, and often makes fun of my strong Italian accent. There are about nine other trainers, and Ms. Osowski treats them all very well. She would provide additional assistance and training to my co-workers, but would purposely exclude me mostly the time. I almost always receive positive feedback from my trainings, as trainees are provided with evaluations to fill out confidentially. I have an average rating of 4.8 (out a possible 5) on these evaluations. Despite this positive feedback, Ms. Osowski has giving me warnings for my performance. Ms. Osowski took over the department in June 2001. I was due a performance evaluation by her in February 2002, which she refused to give me.

In July 2001 Ms. Osowski mentioned that she would help me with my delivery skills and specifically about my English that according to her was not good for my position. We agreed to get information at some local colleges or universities for a program that would help me to improve my presentation skills.

Karen and I spoke with a professor from University of Massachusetts in Boston from the English Department about a class and Karen seemed to let me enroll in this class. Well we were now at the end of August and I asked Karen Osowski several times to let me enroll me before time expires, and she kept postponing me for taking class. Also to understand better my job I asked Karen on August 7 and 8 of 2001 to let me do in my down time BRANCH VISIT and she used this excuse on the third warning. This is unprofessional and dishonest!

I started feeling that Karen was up to something against me and I was getting afraid that I will lose my job. Karen with her authoritative action was making me very uncomfortable. On September 4th 2001 I went to the emergency room at Quincy Medical

2

Hospital. They performed an EKG: PROGNOSIS...HEART ATTACK...A LOT OF STRESS ON THE JOB.

On September 5th 2001 **ANGIOPLAST SURGERY at Massachusetts General Hospital.** I was out for a brief period of time. My supervisor Karen Osowski after this I needed rehabilitation At Quincy Medical Hospital, was harassing me because the Rehabilitation program was to long and I was causing a lot of inconvenience to her and the department. I told to go on medical leave and she refused. During the rehabilitation at Quincy Medical Hospital the therapists had noticed that I was very stressed and upset and I told them what my supervisor Karen Osowski was doing to me. They set me up to terminate me.

Ms. Osowski was accusing me in the warnings that I sat too much while I was teaching class and I leaned to much on one side (Filippo likes one side of the room more). The reality is that I did not sit and lean constantly in class. If I did from time to time it was due to the fact that I had and still have what the doctors state permanent medical problems with my heart and my right leg. Problem that Fleet Boston Financial knew about before I received the warnings. In addition I have a 70% hearing lost on my left ear causing me to raise my voice above normal. This high voice is a normal thing among people with this problem. Ms. Osowski took this problem of mine as an abusive person. Ms. Osowski has a very poor mind and need to not be in this position. Also she was criticizing me the way I was my hands making me very uncomfortable up to the point of being used against me in the written warnings. Doesn't she know that I am Italian by origin and we use our hands differently?

In a few occasions Karen Osowski and a trainer Marie Stairs have made fun of my English and my conditions (Don't fake any more Filippo with your health...Speak English! Don't speak Italian to us!... I don't understand when you speak cause of your heavy accent!... You sound like many of our participants.

This is harassment and discrimination and nobody believes me because I am a man!

Why Karen Osowski on February 8, 2002 gave me a thank you note in appreciation and gratitude for a good job well done? This is very contradicting with her statements!!!

Someone left on my voice mail a **very fealty and profane message (I have the tape).** Karen Osowski and Maria Mendros from human resources refused to investigate about this incident. Filippo you are a man, they said.

On April 19, 2002, my Doctor George Gales, placed me on indefinite leave due to my heart condition and stress. Respondent is aware of this condition, as I forwarded all medical documentation to them. I had a meeting scheduled with the Director of Training Department, Monica Herlihy, for April 23, 2002. I wanted to speak with her about the entire situation, and the fact that Ms. Osowski was purposely treating me differently than the other trainers, I received a phone call the day before, on April 22, 2002, stating that the meeting was cancelled.

**I believe that I am being harassed, discriminated, abused,and singled out due to my strong accent, and my disability. I should request the entire file of my department to show you that the others were treated differently when we know that there were other trainer with problems.**

I am asking the UNITED STATES DISTRICT COURT that Karen Osowski, Maria Mendros from Human Resources and Marie Stairs trainer, (at time of events) be fired From Fleet Boston Financial or now Bank of America. In addition for all the suffering,

The abuse, and all the chaos and turmoil derived from this events (I cannot play and enjoy my seven grandchildren, I cannot pay attention and reciprocate my wife needs in lovemaking, I am depending from my wife to do a lot of things, I cannot do any sport activity, etc.,), I am demanding that for damages caused to me the sum of $ 10.000.000. (Ten Million Dollars in US) should be paid to me. I am asking that a jury to hear this case of mine and help me to be represented because I am on disability and out of work permanently.

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief. Upon request I will provide all material pertinent to this matter.

Filippo Toscano

Filippo Toscano
30 Bradley Road
North Weymouth, MA 02191

Phone; 7810337-7519

4

**EXHIBIT B**

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place , Boston, MA 02108**
**Phone:  (617) 994-6000 Fax:  (617) 994-6024**

---

MCAD DOCKET NUMBER: 02BEM01346          EEOC/HUD CHARGE NUMBER: 16GA201833
FILING DATE: 04/23/02                           VIOLATION DATE: 04/19/02

-----------------------------------------------------------------------------------------------

Name of Aggrieved Person or Organization:
Filippo  Toscano
30 Bradley Rd
North Weymouth, MA 02191
Primary Phone: (781) 337-7519 ext. _____

-----------------------------------------------------------------------------------------------

Named is the employer, labor organization, employment agency, or state/local government agency who
discriminated against me:
Fleet Boston Financial
Human Resources
1 Federal St
MADE 10306P
Boston, MA 02110
Primary Phone: (617)482-2595 ext. _____

Karen  Osowski
Fleet Boston Financial
1075 Main St, 1 Fleet Place
MA DE 13501F
Waltham, MA 02451
Primary Phone: (781)788-2179 ext. _____

No. of Employees:        25+

Work Location: Waltham and Dedham

-----------------------------------------------------------------------------------------------

Cause of Discrimination based on:
     National Origin, Italian, Sicilian, Corsican, Sardinian;  Disability, Heart Disease (including
hypertension, hypotension, etc).

-----------------------------------------------------------------------------------------------

The particulars are:
     I, Filippo Toscano, the Complainant believe that I was discriminated against by Fleet Boston
Financial, Karen Osowski, on the basis of National Origin, Disability. This is in violation of M.G.L. 151B
Section 4 Paragraph 16; M.G.L. 151B Section 4 Paragraph 1 and ADA.

     I began working for Fleet Boston Financial in October 1999. I was initially hired as an Operations
Supervisor, and I was then promoted in December of 2000 as a Training Specialist. Karen Osowski is my
current supervisor. She tries to intimidate me during meetings, and often makes fun of my strong Italian
accent. There are about nine other trainers, and Ms. Osowski treats them all very well. She would provide
additional assistance and training to my co-workers, but would purposely exclude me. I have always
recieve positive feedback from my trainings, as trainees are provided with evaluations to fill out
confidentially. I have an average rating of 4.8 (out of a possible 5) on these evaluations. Despite this
positive feedback, Ms. Osowski has given me three unjustified warnings for my performance. Ms.
Osowski took over the department in June of 2001. I was due a performance evaluation by her in February,
which she refused to give me.

MCAD Docket Number 02BEM01346, Complaint

In September of 2001 I suffered a heart attack, and I was out for a brief period of time. Just recently in April of 2002, my doctor had placed me on indefinite leave due to my heart condition and stress. Respondent is aware of this condition, as I forwarded all medical documentation to them. I had a meeting scheduled with the Director of Training Department, Monica Herlihy, for April 23, 2002. I wanted to speak with her about the entire work situation, and the fact that Ms. Osowski was purposely treating me differently than the other trainers. I received a phone call the day before, on April 22, 2002, stating that the meeting was cancelled. I believe that I am being harassed and singled out due to my strong accent, and my disability.

---

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 4/23/2002.

NOTARY PUBLIC: Stephen P. Lewis

SIGNATURE NOTARY PUBLIC: _____

MY COMMISSION EXPIRES: _____

MCAD Docket Number 02BEM01346, Complaint